Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 847 | **DATE** | 6/13/2002 |
| **CASE TITLE** | FRANK H. BOOMER vs. AT & T CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. At & T's motion to compel arbitration [9-1] and to dismiss these proceedings [9-2] or to stay proceedings [9-3] is denied. Plaintiff's motion for partial summary judgment [7-1] is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 14 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 02 JUN 13 PM 5:50 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANK H. BOOMER, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| ) | No. 02 C 0847 |
| v. ) ) | Judge John W. Darrah |
| AT&T Corporation, a New York corporation, ) ) | |
| Defendant. ) | |

DOCKETED
JUN 1 4 200

## MEMORANDUM OPINION AND ORDER

Plaintiff, Frank H. Boomer ("Boomer"), filed a class action suit against Defendant, AT&T Corporation ("AT&T"), for an accounting and recovery of alleged inequitable overcharges by AT&T of the "Universal Connectivity Charge" ("UCC") to customers. Boomer's Second Amended Class Action Complaint ("Amended Complaint") contains six counts. Count I seeks an accounting of UCC charges. Count II alleges a violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, and the Deceptive Business Practices Act ("DBPA"), 815 ILCS 510/2. Count III alleges unjust enrichment. Count IV seeks a declaratory judgment that Section 7 of the AT&T Service Contract ("Service Contract"), which requires arbitration of disputes, is invalid for various reasons, including: arbitration is cost-prohibitive; the agreement lacks mutuality; unconscionability; adhesion; and lack of consideration. Count V alleges that Section 7 of the Service Contract violates the ICFA and DBPA. Count VI alleges a violation of the Federal Communications Act, 47 U.S.C. § 201.

From May 2001 through July 2001, AT&T mailed a Consumer Services Agreement ("CSA") and an accompanying letter to its customers whom it bills directly in an envelope that included the customer's current monthly bill. (Plaint.'s 56.1(a)(3) Statement ¶ 5). For those AT&T customers

that AT&T did not bill directly, AT&T mailed the same CSA, an accompanying letter, and a sheet containing questions and answers to frequently asked questions (collectively "stand-alone mailing"). (Id., at ¶ 6; Def.'s 56.1(a)(3) Statement ¶ 23). This mailing was contained in an envelope which stated on the outside "**ATTENTION:** Important information concerning your AT&T service enclosed". Def.'s 56.1(a)(3) Statement ¶ 24).

The CSA and letter advised customers that by continuing to use or pay for AT&T service, the customer was accepting the terms of the CSA. (Plaint.'s 56.1(a)(3) Statement ¶ 7; Def.'s Response 56.1(a)(3) Statement ¶ 7). The second paragraph of the CSA provided that in the event a customer did not wish to be bound by the CSA, the customer could call a toll-free number and cancel their AT&T services. (Def.'s 56.1(a)(3) Statement ¶ 32). The cover letter also advised customers that the CSA described AT&T's "new binding arbitration process, which uses an objective third party rather than a jury for resolving any disputes that may arise". (Id., at ¶ 37). The question and answer sheet also informed customers that "binding arbitration" of disputes was one of the "two notable changes" from the terms of the former tariffs. (Id., at ¶ 38).

Section 7 of the CSA provisions governs the resolution of disputes between customers and AT&T. (Def.;s 56.1(a)(3) Statement ¶ 39). Section 7 is preceded with a notice in bold, capitalized text: "**THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION.**" (Id., at ¶ 40).

Section 7 of the CSA provides that all disputes must be resolved by binding arbitration, unless the customer chooses to bring an eligible suit in small claims court or before a regulatory body, such as the Federal Communications Commission ("FCC"). (Def.'s 56.1(a)(3) Statement ¶

2

41). The arbitration is to be conducted according to the Consumer Arbitration Rules of the American Arbitration Association ("AAA") for claims of $10,000 or less and according to the AAA's Commercial Arbitration Rules for claims exceeding $10,000. (Id., at ¶ 42). The AAA's rules concerning arbitration expenses will apply, except that a consumer filing a claim for less than $1,000 need only pay a $20 filing fee, and AT&T will pay the remainder of the charges. (Id., at ¶ 43). The prevailing party may also seek the AAA's fees and expenses from the other party. (Id., at ¶ 44).

AT&T contracted with an outside vendor called Coupon Services to send the stand-alone mailing and provided its customers' names and addresses to Coupon Services. (Def.'s 56.1(a)(3) Statement ¶ 26). Coupon Services sent the stand-alone mailing to Boomer sometime between June 6 and June 29, 2001, third class, with "forwarding service requested". (Id., at ¶¶ 27-28). Boomer's mailing was not returned as undeliverable. (Id., at ¶ 30).

On July 31, 2001, Darcy Ting ("Ting") and her employer, Consumer Action, brought a class action suit against AT&T in California state court, seeking an emergency injunction against enforcement of AT&T's CSA in California. (Def.'s 56.1(a)(3) Statement ¶ 1). AT&T removed the *Ting* case to the United States District Court for the Northern District of California ("California Court").

A class was certified by stipulation in the *Ting* case and was defined as all California persons who subscribed to AT&T's residential long-distance service as of July 31, 2001, who placed long-distance calls using AT&T's residential long-distance service after July 31, 2001. (Def.'s 56.1(a)(3) Statement ¶ 4). Following expedited discovery, a bench trial took place before Magistrate Judge Zimmerman. (Id., at ¶ 6). During the trial, certain evidence was presented relating specifically to the California long-distance telephone market and the market share of different carriers in that

3

market, survey results conducted within California, and California's court filing fees. (Id., at ¶¶ 7-9). No evidence was presented in the *Ting* case relating specifically to the Illinois residential long-distance telephone market, Illinois court filing fees, Illinois residential long-distance consumers, or Boomer. (Id., at ¶¶ 10-16).

On January 15, 2002, the magistrate judge issued his decision, *Ting v. AT&T*, 182 F. Supp. 2d 902 (N.D. Cal. 2002) (*Ting*). The magistrate found that the Legal Remedies Provision of the CSA was illegal and unconscionable pursuant to California law. In reaching his decision, the magistrate relied in part on survey results of California long-distance customers, evidence of market data for the California long-distance market, and the cost of arbitration in California. (*Ting*, 182 F. Supp. 2d at 929-34; Def.'s 56.1(a)(3) Statement ¶¶ 17-20).

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment on Count IV of the Amended Complaint and Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings. Defendant concedes, in its reply to Plaintiff's motion for partial summary judgment, that Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings may be considered a motion for summary judgment in favor of Defendant on Counts IV and V of Plaintiff's Second Amended Complaint. Accordingly, the summary judgment standard is applied to each parties' motion.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (*Celotex*). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*,

203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of its claim on which it bears the burden of proof at trial. As such, it must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

**I. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff seeks summary judgment on Count IV of his Amended Complaint, a declaratory judgment that Section 7 of the CSA is invalid, arguing that collateral estoppel dictates that Section 7 is unconscionable and void pursuant to the *Ting* case.

The doctrine of collateral estoppel bars the relitigation of issues. An issue may not be relitigated if: (1) the issue to be precluded is the same issue that was involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom preclusion is invoked was represented in the prior action. *See Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000). Furthermore, if the invocation of collateral estoppel is nonmutual and offensive, the court must also consider whether applying collateral estoppel is appropriate under the circumstances. *See Parklane Hosiery Co. v. Shor*, 439 U.S. 322, 326 (1979); *Chicago Truck Drivers, Helpers & Warehouse Union Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530-31 (7th Cir. 1997) (*Century*). The invocation of collateral estoppel is nonmutual and offensive when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant previously litigated unsuccessfully in another action against a different party. *See Century*, 125 F.3d at 531, n.3.

AT&T first argues that collateral estoppel does not apply to the instant case because the issue to be precluded is not the same issue that was involved in *Ting*. AT&T argues that the *Ting* court applied California law and that this Court should apply federal law because the Federal

Communications Act ("FCA") preempts Boomer's state law claims. AT&T made the same argument in *Ting*. The *Ting* court rejected AT&T's argument. *Ting*, 182 F. Supp. 2d at 938.

State law claims may be preempted by federal statute when the federal statute expressly directs that state law is preempted or through implication. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (*Jones*). AT&T argues that the FCA impliedly preempts state law.

A federal law implicitly preempts a state law "when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively ... or when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal quotations omitted). The party arguing for preemption bears the burden of providing, by clear evidence, Congress's intent to preempt state law. There is a presumption that "Congress does not cavalierly preempt state-law causes of action". *Medtronic v. Lohr*, 518 U.S. 470, 485 (1996) (*Medtronic*).

The FCA provides that common carriers, such as AT&T, can only impose those "charges, practices, and regulations" that are "just and reasonable" and prohibits carriers from making any "unjust and unreasonable discrimination" between customers. 47 U.S.C. §§ 201(b), 202(b). AT&T cites to *AT&T v. Central Office Tel.*, 524 U.S. 214 (1998) (*Central Office*), in support of its argument that language indicates Congressional intent to have the FCA preempt state law. However, in *Central Office*, the Court determined that the FCA preempted the plaintiff's state law claims based on the alleged discriminatory rates or discriminatory terms imposed on customers. *Central Office*, 524 U.S. at 223. Such language is explicitly found in the FCA. There is no such language, or implication, that Congress intended to preempt a customer from bringing a cause of action to determine whether a dispute must be resolved before an arbitrator or a court, nor preclude a class action on the matters such as those presently in dispute. Neither Section 201 or 202 address the

6

issues of contract formation, illegality or unconscionability of such contracts. The FCC has recognized this in holding that "the [FCA] does not govern other issues, such as contract formation and breach of contract, that arise in a detarrifed environment. *See Order on Reconsideration*, 12 F.C.C.R. 15, 014 at ¶ 77.

Based on the above, Boomer's state law claims are not preempted by the FCA.

AT&T next argues that even if Illinois law is applied, collateral estoppel is not applicable because of differences in Illinois law and the laws of California applied in *Ting* and because the evidence relied upon in *Ting* is not applicable to the present suit.

The question of whether the issue to be precluded is the same issue that was involved in a prior action is a question of law. *Adair*, 230 F.3d at 893. "[T]he issue implicated in the second suit must be identical in all respects to the issue decided in the first suit, with no changes in the controlling facts and applicable legal rules." *See Coleman v. Commissioner of Internal Revenue*, 16 F.3d 821, 830 (7th Cir. 1994). Factors considered in making this determination include: (1) whether there is substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first; (2) whether any new evidence or argument involves application of the same rule of law as that involved in the prior proceeding; (3) whether pretrial preparation and discovery related to matter presented in the first action reasonably can be expected to embrace matter sought to be presented in the second action; and (4) whether and to what extent the claims involved in the two proceedings are closely related. *Builders Assoc. of Greater Chicago v. City of Chicago*, 2001 WL 664453 (N.D. Ill. June 12, 2001); *Restatement (Second) of Judgment* § 27, cmt. ; *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).

Applying these factors, the issue presented in the present case is not identical to that

7

considered in *Ting* as to preclude any argument that Section 7 of the CSA is unconscionable.

First, a review of the *Ting* decision indicates that there is not a substantial overlap between the evidence and argument in *Ting* and the evidence and argument that would be presented in Illinois. The *Ting* court relied upon evidence and argument that is specific to California in arriving at its conclusion of unconscionability. This included evidence and argument that California residents did not really have a choice of accepting AT&T's dispute resolution proceeding because residential long-distance carriers who service two-thirds of the California market all provide substantially similar dispute resolution provisions. In addition, California residents would likely be surprised by the dispute resolution proceeding because surveys conducted of California residents indicated that many would not open and/or read the mailing from AT&T. This evidence was relied upon by the *Ting* court and is not applicable in the present suit; this Court cannot assume that the statistics and survey results from California would be substantially the same if gathered from residents of Illinois.

The evidence required pursuant to Illinois law, as different than that present in *Ting*, also leads to the conclusion that pretrial preparation and discovery related matters in *Ting* could not be reasonably expected to embrace all material matters presented in this action.

Lastly, a comparison of California and Illinois law as to unconscionablity of a contract, while similar, does require an analysis of different factors. These differing factors would require the presentation of different and/or new evidence and argument than that presented in *Ting*.

Under California law, a contract is unconscionable if it contains both a procedural and substantive unconscionability element. Procedural unconscionability is an inequity of bargaining power that results in no real negotiation and an absence of meaningful choice. Factors reviewed in determining procedural unconscionability include whether: (1) the contract is a contract of adhesion,

8

(2) there is a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired services, and (3) the disputed language would be a "surprise" to the party opposing such language. *See Ting*, 182 F. Supp. 2d at 928-929 (citations and quotations omitted). Substantive unconscionability exists if the contract terms are so one-sided as to shock the conscience or the contract imposes harsh or oppressive terms. *See Ting*, 182 F. Supp. 2d at 927-28 (citations and quotations omitted).

Under Illinois law, a contract is unconscionable if it is "improvident, oppressive, or totally one-sided". *Adhern v. Knecht*, 202 Ill. App. 3d 709, 716 (1990) (*Adhern*). In other words, an agreement which no reasonable person would make and no honest person would accept. *In re Drag*, 326 Ill. App. 3d 1051, 1055 (2002). Factors relevant to this inquiry include gross inequity in the bargaining positions of the parties, gross disparity in the values exchanged, terms unreasonably favorable to the stronger party, the age and education of the contracting parties, and whether the aggrieved party had a meaningful choice when faced with unreasonably unfavorable terms. *See Adhern*, 202 Ill. App. 3d at 716.

Based on the above, collateral estoppel does not apply to the present determination of whether Section 7 of the CSA is unconscionable in this Court.

Assuming argumendo, that all of the elements of collateral estoppel were met, application of offensive collateral estoppel would be unfair in the present case.

"[A]n issue is *not* precluded if it is 'one of law and treating it as conclusively determined would inappropriately foreclose opportunities for obtaining reconsideration of the legal rule upon which it is based'". *See Century*, 125 F.3d at 531, quoting *Restatement (Second) of Judgments* § 29(7). This consideration applies when the issue in question is of general interest and the issue has

9

not been resolved by the highest court than can resolve such issue. *See Century*, 125 F.3d at 531 (affirming district court's denial of collateral estoppel because the district court was faced with a pure legal question that had not been addressed by the Supreme Court or the Seventh Circuit).

As in *Century*, one of the basis of Count IV appears to present a question of law, *i.e.*, the unconscionability of a contract provision used by many long-distance carriers throughout the United States. The Seventh Circuit and the Supreme Court have not addressed the issue. Accordingly, collateral estoppel in the present case is also not appropriate for this reason.

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is denied.

## II. AT&T's Motion for Summary Judgment to Compel Arbitration

AT&T moves to compel arbitration pursuant to Section 7 of the CSA and, in effect, asks for summary judgment in its favor as to Counts IV and V, which seek the opposite relief and which raise these same issues. AT&T also moves to stay or dismiss the proceedings if arbitration is compelled.

As set out above, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322-23.

The FAA provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once a court is satisfied that an issue is arbitrable, the court must stay the action pending the arbitration. *See* 9 U.S.C. § 3.

The FAA places arbitration clauses on equal footing with other contracts; however, it does not require a party to arbitrate if that party has not agreed to do so. *See EEOC v. Waffle House, Inc.*,

534 U.S. 279, ___ (2002). A federal court must order arbitration to proceed once the court is satisfied that the making of the arbitration agreement or failure to comply with the agreement are not in issue. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (*Prima Paint*); 9 U.S.C. § 4. Therefore, if a claim is directed at the arbitration clause itself, an issue which goes to the making of the agreement to arbitrate exists, and the court may proceed with the claim. However, if the claim is directed at the contract generally, an issue does not exist that goes to the making of the agreement to arbitrate, and arbitration should be ordered. *See Prima Paint*, 388 U.S. at 403-04; *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997) (*Hill*).

In the instant case, Boomer alleges in Counts IV and V that the arbitration clause is invalid because it is unconscionable, cost-prohibitive, lacks mutuality, and violates the ICFA and DBPA. Boomer alleges, in part, that he was not aware of the CSA or Section 7 and that he does not recall receiving the mailing and did not assent to agree to arbitrate. Section 7 was hidden and "hoisted" upon consumers without the benefit of negotiation and provides substantial benefit to AT&T while substantially decreasing the rights of consumers. The limitations on the actions consumers can take pursuant to Section 7 are unconscionable and violate public policy. Furthermore, arbitration, as applied by the CSA, would be cost-prohibitive. Discovery on these issues was recently initiated and is still open.

This case is unlike *Hill*, in which the Seventh Circuit found that an arbitration agreement that was within a contract that the plaintiffs admitted receipt of, but failed to read, was enforceable. *Hill*, 105 F.3d at 1148. Multiple factual questions exist in the present case as to whether the arbitration agreement is enforceable in light of the several grounds alleged by the Plaintiff for its unenforceability. For example, Plaintiff alleges that the arbitration agreement is unconscionable

11

because they were in a disparate bargaining position because they did not have a "real" choice between accepting the terms of the arbitration agreement and denying the arbitration agreement because the other major carriers in the area had the same arbitration clause. In *Ting*, when deciding a similar issue under California law, the court relied upon evidence relating to California long-distance customers and market data for the California long-distance market. *Ting*, 182 F. Supp. 2d at 929-34. Such evidence regarding the Illinois market is not yet before the Court. Accordingly, genuine issues of material fact exist whether the arbitration clause is enforceable.

AT&T argues that these claims actually go to the validity of the entire CSA, not just the arbitration clause; therefore, arbitration is proper. However, Counts IV and V of the Second Amended Complaint, when read in their entirety and in context of the Amended Complaint, challenge the validity of the arbitration clause and put at issue the formulation of the contested arbitration agreement. Genuine issues of material fact exist as to the validity of the arbitration clause (Section 7 of the CSA). Therefore, the Court cannot grant summary judgment in favor of AT&T as to Counts IV and V and compel arbitration or stay or dismiss the proceedings, as AT&T requests. *See Prima Paint*, 388 U.S. at 403-04; 9 U.S.C. § 4.

Based on the foregoing, AT&T's Motion to Compel Arbitration and to Dismiss or Stay Proceedings is denied.

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is denied. Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings is denied.

Dated: June 13, 2002

JOHN W. DARRAH
United States District Judge